**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

| | | |
|---|---|---|
| ABRO INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| 1NEW TRADE, INC., IGOR ZORIN, | ) | CASE NO.:  3:14-cv-1984-TLS-MGG |
| BORIS BABENCHIK and VADIM | ) | |
| FISHKIN, | ) | |
| | ) | |
| Defendants, | ) | |
| ——————————————— | ) | |
| | ) | |
| 1NEW TRADE, INC., IGOR ZORIN, and | ) | |
| BORIS BABENCHIK, | ) | |
| | ) | |
| Counter-Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ABRO INDUSTRIES, INC. and | ) | |
| PETER BARANAY, | ) | |
| | ) | |
| Counter-Defendants. | ) | |

## ABRO'S OPPOSITION TO DEFENDANTS' SUMMARY JUDGMENT MOTION

Defendants 1New Trade, Inc., Igor Zorin, Vadim Fishkin, and Boris Babenchik's (collectively "1New") motion for summary judgment on ABRO Industries, Inc.'s ("ABRO") copyright infringement claims should be denied. First, there is no dispute that ABRO has publicly available, registered copyrights on the text and photo on its Carb & Choke Cleaner labels. The copyright applications were included with (and necessary for this Court's jurisdiction over) ABRO's Complaint and Amended Complaint; 1New, in fact, included selected portions of the prosecution history culminating in the certificates of registration in its summary judgment

filings.[1] Second, genuine issues of material fact exist as to (1) whether ABRO's copyrights are valid in view of the multiple ways to express the ideas depicted in the photo and text; (2) whether 1New infringed those copyrights—*i.e*, whether the text and photograph on 1New's Carb & Choke Cleaner label are substantially similar to the text and photograph on ABRO's Carb & Choke Cleaner label; and (3) assuming infringement, whether ABRO is entitled to actual damages and an injunction, where defendants admittedly received almost $120,000 from sales of products with alleged infringing labels, ABRO has suffered hundreds of thousands of dollars in lost profits, and the risk of future infringement continues.  As explained more fully below, 1New's arguments are premised on misstatements of fact, law, or both, and summary judgment on ABRO's copyright claims is, therefore, not proper.

## I.     Factual Background and Statement of Genuine Disputes

ABRO has filed its own motion for summary judgment detailing the relationship between the parties and incorporates its prior statement of facts and designations of evidence (DE 170-1) into this brief.   ABRO has also separately moved to strike inadmissible portions of the Zorin/Babinchik affidavit. ABRO designates the following facts and genuinely disputed facts establishing that 1New's summary judgment motion should be denied[2]:

1.      At issue in this case are four ABRO copyright registrations issued by the U.S. Copyright Office related to ABRO Carb & Choke Cleaner product labels. *See* DE 177, 18-21;

---

[1] Defendants apparently seek to leave the Court with the false impression that the Copyright Office declined to issue copyright registrations to ABRO.  This is not true and defendants' decision to withhold documents telling the complete prosecution story is inappropriate.

[2] 1New includes many allegations that are not "material", as that term is defined in this Circuit, to this specific motion. ABRO is not addressing the non-material statements, although it does dispute many of them, because they are not germane to the resolution of this motion. ABRO will address those statements, to the extent necessary, in its reply in support of its motion for summary judgment.

ABRO Exs. A-D.  ABRO filed applications to register its copyrights on October 23, 2014 and October 29, 2014. The Copyright Office requested certain modifications before it would issue copyright certificates for the photograph and the text on ABRO's labels.  1New's Exs. 12a-12d; DE 177, 14-17. After back and forth communications with ABRO, the Copyright Office inadvertently sent a rejection letter on December 14, 2014.  DE 177-13.  ABRO immediately contacted the Copyright Office to remind it of the ongoing communications. ABRO Ex. E. Those issues were addressed in January 2015. ABRO Ex. E. The Copyright Office ultimately issued all four registration certificates.   ABRO Exs. A-D.

2.      ABRO's copyright registrations are publicly available, as shown in 1New's inclusion of the public catalogs for the copyrights. *See* 1New Exs. 13-16; DE 177, 18-21.

3.      The title, text, and photos on ABRO's Carb & Choke Cleaner product labels were created by (or for) ABRO and are original ABRO works.  ABRO Ex. F at ¶ 3.

4.      Defendants Zorin and Babenchik sold ABRO branded products, including ABRO Carb & Choke cleaners, with ABRO's permission in Russia for many years. DE 177-41 ¶3 (1New Ex. 34 (under seal)).

5.      As early as September 2013, Zorin and Babenchik were actively working to create 1New Trade. They incorporated 1New Trade on October 5, 2013 with the help of Fishkin. DE 170-1 at ¶ 65. 1 New employs a similar business model as ABRO and directly competes with ABRO in the Russian market in sales of automotive consumer products, including the carburetor and choke cleaners at issue in this case.  DE 177-41 ¶¶10-12.

6.      Zorin and Babenchik are the only owners and directors of 1NEW Trade.  *Id.* ¶6.

7.      1New ordered its competing carburetor cleaner can and label from Quest—an affiliate of ABRO's supplier of cans and labels—and sold two full sea containers or 6,480 cases

of alleged infringing products into the Russian market.  DE 177-39 (1New Ex. 32 at 25 (under seal)).  1New claims that it has not manufactured, ordered for production or sold any of its alleged infringing products after ABRO filed this lawsuit.  DE 177-41 ¶¶22-23.

8.      To date, 1New's gross revenue from sales of products with allegedly infringing labels was ▮▮▮▮▮ DE 177-39 (1New Ex. 32 at 15 (under seal)).  1New claims in conclusory fashion that it made no profit from these sales.  DE 177-42 ¶44.

9.      Although 1New further claims that ABRO's Carb & Choke Cleaner label contains "solely" warranties, disclaimers, factual production information and user instructions required by both U.S. and Russian regulations, DE 177-42 ¶¶ 46, 47, neither the specific title, "Carb & Choke Cleaner," nor the specific arrangement of text, are required by regulation.  Thus, whether ABRO's Carb & Choke Cleaner label contains protectable subject matter is genuinely disputed.

10.      1New's claim that it did not authorize copying or intend to copy the ABRO Carb & Choke Cleaner label is genuinely disputed.  DE 177-42 at 11, ¶49. *See* DE 170-1 at ¶ 67, 70, and 71. 1New's access to ABRO's products, its actions to develop its can, and the uncanny resemblance between 1New's and ABRO's Carb & Choke Cleaner labels raises a factual issue as to copying.  DE 177-25, 27; DE 167 at 21; ABRO Ex. G.

11.      Likewise, 1New's claim that any "carb and choke cleaner" goes by "no other name and is sold and called that name in Russian, US markets and all over the world" is genuinely disputed.  DE 177-42 at 11, ¶51.  1New's own exhibit of hand-picked carburetor cleaner cans demonstrates that other manufacturers of carburetor cleaner use many different titles such as "carburetor cleaner," "carb cleaner," and "carburetor & choke cleaner," among others. DE 177-27.  Indeed, the exhibit depicts six different products:  three are either ABRO or 1New products labeled "Carb & Choke Cleaner," the other three from unrelated companies are labeled

"Throttle Body, Carb & Choke Cleaner," "Carb Spray Cleaner," and "Carburetor Parts Cleaner Chlorinated." *Id.* Not surprisingly, and as further proof of copying, 1New also utilized the same red and white color scheme for the "Carb & Choke Cleaner" text, placing the text on the same blue background in the same location on the can, with a virtually identical font selection as ABRO. *See* DE 177-27.

12.      A google search for carburetor cleaners demonstrates that there a multiple design options and word choices for carburetor cleaner product labels. *See* https://www.google.com/search?q=carb+%26+choke+cleaner&source=lnms&tbm=isch&sa=X&sqi=2&ved=0ahUKEwi0t7ualOHUAhUMwYMKHZncC0MQ_AUICCgD&biw=1129&bih=572. Examples of other design options are attached as Exhibit 1 to Exhibit F.

13.      1New's claim that other carburetor cleaner products contain the same information as the 1New and ABRO carburetor cleaner products, including warranties, disclaimers, factual product information, user instructions, and warnings, is not supported. DE 177-42 at 11-12, ¶¶53-54. Despite the fact that some information may be required by regulations, whether this limits protection for the original choices of how each manufacturer arranges and selects words to express these concepts on its product is genuinely disputed.

## II.    Summary Judgment Standard

"Summary judgment is only appropriate if the evidence submitted below reveals no genuine issue as to any material fact and the moving party (defendant) is entitled to judgment as a matter of law." *Dwyer Instruments, Inc. v. Sensocon, Inc.*, 873 F. Supp. 2d 1015, 1019 (N.D. Ind. 2012) (citation omitted). Facts and reasonable inferences are to be construed in the light most favorable to the nonmoving party. *Id.* "'In the light most favorable' simply means that summary judgment is not appropriate if the court must make 'a choice of inferences.'" *Johnson*

*v. Cypress Hill*, 619 F. Supp. 2d 537, 542 (N.D. Ill. 2008).  "The choice between reasonable inferences is a jury function." *Id.*

"A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Dwyer Instruments, Inc.,* 873 F. Supp. 2d at 1019 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)).  A genuine issue of triable fact exists if a reasonable jury could return a verdict for the nonmoving party.  *Bryant v. Gordon*, 483 F. Supp. 2d 605, 610 (N.D. Ill. 2007).

III.    **1New is not Entitled to Summary Judgment**

A.    **ABRO properly filed its application for copyright registration before filing its complaint.**

In its introductory paragraph, 1New claims ABRO filed the copyright infringement claim to try to force 1New out of business, stating "[t]his was made all too clear when after significant discovery efforts ABRO finally disclosed that it never even filed, let alone held any valid registered copyright until the *same day* that it filed its original copyright infringement Complaint."  DE 176 at 1 (emphasis in original).  This claim is simply not true and the alleged factual support, on its face, is false.  ABRO filed its copyright application in order to move forward with a lawsuit to protect its copyrights from 1New's infringement. DE 170 at 21, ¶ 88. No significant discovery efforts were necessary to ascertain when the copyright applications were filed given that ABRO expressly stated as much in its Complaint and Amended Complaint. DE 1 at 3, ¶ 15; DE 7 at 3, ¶ 15.

The Seventh Circuit has held that filing an application for copyright registration is sufficient to satisfy the condition precedent required under 17 U.S.C. § 411(a) before filing a lawsuit.  *See Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 631 (7th Cir. 2003)

6

("Although a copyright no longer need be registered with the Copyright Office to be valid, an application for registration must be filed before the copyright can be sued upon."); *Panoramic Stock Images, Ltd. v. John Wiley & Sons, Inc.*, 963 F. Supp. 2d 842, 849-850 (N.D. Ill. 2013) (noting that the Seventh Circuit follows the "application approach"); *Levanthal v. Schenberg*, 917 F. Supp. 2d 837, 844 (N.D. Ill. 2013) (condition met where party filed copyright application on the same day as amended complaint).

In accordance with Seventh Circuit authority, ABRO filed applications to register its copyrights on October 23 and 29, 2014 (DE 7-1, 7-2, 7-3, 7-4), and filed its initial Complaint on October 23, 2014 (DE 1), and Amended Complaint on November 4, 2014.   (DE 7.)   The copyright registrations are dated October 23 and 29, 2014.   *See* ABRO Exs. A-D; DE 177, -18-21.   Thus, ABRO satisfied the condition precedent under 17 U.S.C. § 411(a). And, 1New has known since day one of this action when the applications were filed.

### B.      ABRO's Carb & Choke Cleaner label is protected by copyright.

A copyright infringement claim requires: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."   *Forest River, Inc. v. Heartland Recreational Vehicles, LLC*, 753 F. Supp. 2d 753, 758 (N.D. Ind. 2010) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).   Copying is demonstrated by showing that the infringer had access to the copyrighted work and that there is substantial similarity between the protected work and the infringing work.   *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 508 (7th Cir. 1994).

Notably, 1New does not (because it cannot) challenge the access requirement. The owners of 1New were previously affiliated with ABRO distributors, selling ABRO branded products in the Russian market including ABRO's Carb & Choke Cleaner at issue in this case.

7

1New's Answer, DE 23 at ¶¶ 5, 6, 17; Def. Ex. 34-DE 177-41 at ¶3.   In addition, 1New specifically met with Quest in an effort to create a product like ABRO's. DE 170-1 at ¶ 67-74.

1New argues that ABRO has no presumption of validity for its Carb & Choke Cleaner packaging under 17 U.S.C. § 410(c) because the presumption "arises *only* if the certificate of registration is 'made before or within five years after first publication of the work.'"   DE 176 at 3 (emphasis added).   1New's statement of the law is inaccurate.   17 U.S.C. § 410(c) actually provides:

> In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.   *The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court*.

17 U.S.C. § 410(c) (emphasis added).   Courts have, in their discretion, repeatedly held that copyright registrations were prima facie evidence of valid copyrights despite being obtained more than five years after first publication.   *See Graphic Design Mktg., Inc. v. Xtreme Enters., Inc.*, 772 F. Supp. 2d 1029, 1033 (E.D. Wis. 2011) (determining that registration certificate was prima facie evidence of validity of copyright for "Stickers" red header even though the registration was obtained 10 years after first publication); *see also Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, No. 10-CV-419-GPC (WVG), 2012 WL 6553403, at *2 (S.D. Cal. Dec. 13, 2013) ("Most courts conclude that untimely certificates constitute prima facie evidence of validity of copyrights.").   It is therefore within the Court's discretion to determine that ABRO's certificates of registration constitute prima facie evidence of the validity of ABRO's copyrights, even though the registrations were obtained more than five years after first publication of the works.

Throughout its brief, 1New incorrectly argues that ABRO's copyrights were "rejected." ABRO received copyright registrations on all of the copyrights at issue in this lawsuit. Although the Copyright Office required certain alterations to the applications as originally submitted, none of the copyright applications was finally rejected.  Rather, all of the copyrights issued after back and forth communications with the Copyright Office as to necessary modifications. 1New selectively designates one letter from the Copyright Office, suggesting it establishes that ABRO's copyrights are not valid.  DE 177-13.  However, 1New does not designate the follow-up correspondence from ABRO addressing that letter.   ABRO Ex. E.   In addition, 1New fails to recognize that its own evidence (the public catalogs) shows that all four copyrights issued.   DE 177, 18-21. If the registrations had not issued, they would not appear in that official government publication in 2017.  1New's selective citation of the evidence is improper.[3]

1. **ABRO's Carb & Choke Cleaner label is protected by copyright because it contains original elements.**

The Copyright Act protects "original works of authorship fixed in any tangible medium of expression . . . from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device."  *Schrock v. Learning Curve Int'l, Inc.*, 586 F.3d 513, 517 (7th Cir. 2009) (quoting 17 U.S.C. § 102(a)).  The Supreme Court has defined originality as meaning "the work was independently created by the author . . . and that it possesses at least some **minimal** degree of creativity.  . . . [T]he requisite level of creativity is

---

[3] 1 New also fails to disclose to the Court that the December 2014 letter only applied to one application, not all four of ABRO's applications. 1New also repeatedly states throughout its brief that ABRO never produced the actual registration certificates during discovery to suggest that this is evidence that they do not exist.  Copyright registrations are matter of public record and are publicly accessible.  1New's own evidence shows the registration numbers. In any event, additional copies of the registration certificates provided to 1New's counsel are included as ABRO Exs. A-D; H.

**extremely low; even a slight amount will suffice**. . . . [O]riginality does not signify novelty; **a work may be original even though it closely resembles other works**." *Id.* at 519 (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991)) (emphasis added). "It is well established that labels are subject to copyright protection if the label manifests the necessary modicum of creativity." *Sebastian Int'l, Inc. v. Consumer Contract (PTY) Ltd.*, 664 F. Supp. 909, 913 (D.N.J. 1987), *vacated on other grounds*, 847 F.2d 1093 (3d Cir. 1988) (citations omitted).

### a.  ABRO's text on the Carb & Choke Cleaner label is original.

Regardless of the presumption of validity, ABRO's text on its Carb & Choke Cleaner label is original and its copyrights are valid. "Literary works" and "compilations" are entitled to copyright protection.  17 U.S.C. §§ 102(a) (1) & 103(a).  "The necessary degree of 'originality' is low, and the work need not be aesthetically pleasing to be 'literary.'" *American Dental Ass'n v. Delta Dental Plans Ass'n*, 126 F.3d 977, 979 (7th Cir. 1997) (citing *Feist*, 499 U.S. at 345-46). Factual compilations are protected because "[t]he compilation author typically chooses which facts to include, in what order to place them, and how to arrange the collected data so that they may be used effectively by readers." *FMC Corp. v. Control Solutions, Inc.*, 369 F. Supp. 2d 539, 562 (E.D. Penn. 2005).  "These choices as to selection and arrangement, so long as they are made independently by the compiler and entail a minimal degree of creativity, are sufficiently original . . . [for copyright protection.]" *Id.* (quoting 1 MELVILLE B. NIMMER AND DAVID NIMMER ON COPYRIGHT §§ 2.11[D], 3.03 (Matthew Bender, Rev. Ed.).

Here, the Copyright Office expressly indicated to ABRO that it could "register your claims in **Text and Photographs**," "[w]e can register the claim in text and photograph," and "[w]e can complete the processing of this application for the original photo and text if you

authorize deleting reference to the remaining elements in your response to this email." DE 177, 14-17. Despite this express acknowledgment of validity from the Copyright Office, 1New argues, without factual support, that "there is only one way to inform a consumer of what is inside a can of carb and choke cleaner—to place a label showing a picture of a carburetor and text stating 'Carb & Choke Cleaner'." DE 176 at 6. The question is "whether the idea that is the subject of copyright is capable of various modes of expression." *FMC Corp.*, 369 F. Supp. 2d at 567. 1New's own exhibits demonstrate that there are many ways to express this idea, using different text, graphics, and titles, among other things. *See* DE 177-22, 177-26, 177-27. Even comparing 1New's hand-picked carburetor cleaner labels, one can see that 1New's Carb & Choke Cleaner label is virtually identical to ABRO's Carb & Choke Cleaner label and is different from other labels. *See* DE 177-27; DE 170-1 at 18.

1New asserts that "[t]he placement of a picture of a product on that same product's packaging is not copyrightable because when there is essentially only one way to express an idea, the idea and its expression are inseparable…" DE 176 at 5. 1New is referring to a copyright principle known as merger. In *Innovation Ventures, LLC v. Ultimate One Distributing Corp.*, 176 F. Supp. 3d 137, 157 (E.D.N.Y. 2016), the court determined that the merger doctrine did not apply and Plaintiffs' 5-hour ENERGY caution label was entitled to copyright protection because its content could be expressed in a variety of ways. The merger doctrine defense "bars a copyright 'when there is essentially only one way to express an idea and thus the idea and its expression are inseparable.'" *Id.* at 156. The Plaintiffs in *Innovation Ventures* provided a caution on their label to warn about the side effects of caffeine and niacin. *Id.* Defendants, who were accused of counterfeiting Plaintiffs' 5-hour ENERGY drinks, argued that allowing Plaintiffs to copyright the caution would grant Plaintiffs "ownership over the idea of a caution

label for caffeinated beverages itself." *Id.* at 145, 156.  In disagreeing with Defendants, the court determined that because there were multiple ways for the warning to be communicated, the "Caution" label idea and the expression had not merged, entitling the caution label to protection. *Id.* at 157.  Similarly, here, ABRO's Carb & Choke Cleaner label is entitled to copyright protection because the label includes text and a photograph of a carburetor that could be expressed in a variety of ways.

1New also claims that ABRO cannot demonstrate that the Carb & Choke Cleaner label is copyrightable, arguing generally that a photo of a carburetor, the name of the product, descriptions of contents of packaging, user instructions, weight, safety and regulatory warnings are not copyrightable. DE 176 at 10-11.  1New is simply wrong on the law as "labels containing more than a mechanical list of ingredients manifest the amount of creativity necessary to enjoy copyright protection." *See FMC Corp.*, 369 F. Supp. 2d at 572.

1New further claims, without authority, that warnings and disclaimers on the ABRO Carb & Choke Cleaner label are not copyrightable because they are utilitarian and dictated by government regulations.  DE 176 at 12-13.  This is not the case.  *See Ultimate One*, 176 F.Supp.3d at 157 ("Caution" label on 5-hour ENERGY held copyrightable); *see also Innovation Ventures, LLC v. N2G Distributing, Inc.*, 635 F. Supp. 2d 632, 640 (E.D. Mich. 2008) (medical caution statement contained minimum level of originality to warrant copyright protection); *see also FMC Corp.*, 369 F. Supp. 2d at 568-69 (pesticide manufacturer not precluded from infringement claim over label where Environmental Protection Agency requirements did not require verbatim copying).

In *N2G Distributing*, the court denied the Defendants' motion to dismiss and motion for summary judgment on the Plaintiff's copyright claims where the Plaintiff's medical caution

language on its "5-hour energy" product contained sufficient originality.  *N2G Distributing*, 635 F. Supp. 2d at 640.   There, the labels on Defendants "6-hour energy" and "Pure Energy" products copied plaintiff's caution label.  *Id.* at 638.  In analyzing the claims, the court discussed both the merger doctrine and the scene a faire doctrine.  *Id.*  The scene a faire doctrine "applies when external factors constrain the choice of expressive vehicle, *i.e.* if the expression is a standard phrase or stock expression, the expression is not copyrightable."  *Id.*  Courts "focus on whether the idea is capable of various modes of expression," to discern whether either doctrine applies.  *Id.* at 640.  In *N2G Distributing*, the court determined that neither doctrine applied, and that Plaintiff's medical caution statement was sufficiently original because although the medical caution statements on other products were "substantially similar, in that they all express[ed] the same basic facts, the statements [were] not identical."  *Id.*  "Each manufacturer [chose] different language and word order to emphasize or de-emphasize various aspects of the medical warning." *Id.*  Similarly, here, ABRO chose its own words and placed them in a specific order on its Carb & Choke Cleaner, which meets the sufficient minimal requirement for originality.  *See* DE 177-3, 4; DE 177-20; ABRO Ex. G.

1New repeatedly argues, again without support, that "[t]here is nothing unique or creative about the instructions ABRO provides to the users of carb & choke cleaner."  DE 176 at 14. However, uniqueness with respect to the instructions given is not required.  It is only necessary that the text is original, which requires only the slightest bit of creativity.  *See Schrock*, 586 F.3d at 519 ("[T]he requisite level for creativity is extremely low; even a slight amount will suffice. . . . "[O]riginality does not signify novelty; a work may be original even though it closely resembles other works.") (quoting *Feist*, 499 U.S. at 345).  The works are original to ABRO and, at a minimum, exhibit more than a slight amount of creativity.  ABRO Ex. F at ¶ 3.

In *FMC Corp.*, the court granted a preliminary injunction for the Plaintiff because it determined, in part, that there was a likelihood of success on the merits in its copyright infringement claim where the Defendant copied the Plaintiff's pesticide label, including its user instructions. *FMC Corp.*, 369 F. Supp. 2d 539 at 572-73. There, the Defendant's product contained the same ingredients as the Plaintiff's product, TalstarOne. *Id.* at 543. The Defendant's label was also the same as the Plaintiff's TalstarOne label. *Id.* at 545. The court determined that "[the Plaintiff's] description of how to most effectively use TalstarOne is the proper subject of a copyright." *Id.* at 561. The court also noted that for a compilation of purely factual information, as long as the selection and arrangement of the facts are original, they are eligible for copyright protection. *Id.* at 562. Similarly, here, ABRO's Carb & Choke Cleaner label explains how to use the product and those instructions are arranged in a way that ABRO selected and therefore has the minimal amount of originality to be eligible for copyright protection. DE 7-3, 7-4, 177-25.

1New states, again without authority (other than its self-serving statement of facts), that "[a]s for the name of the product itself – 'Carb & Choke Cleaner,' there is simply no other way to name this product." DE 176 at 11. "Carb" is short for carburetor and the decision to use "carb" is a design feature of ABRO's label. The merger doctrine does not apply because there are multiple ways to describe the name of the product and 1New chose to make a direct copy of ABRO's name by using the same white color placed on the same blue background in the same location with an ampersand and virtually identical font. *See Ultimate One*, 176 F. Supp. 3d at 157; *see* DE 177-27.

Because there are numerous ways to express the name of the product, instructions, and other information on ABRO's Carb & Choke cleaner can, ABRO's label possesses the modicum

of creativity required in its text and in its selection and arrangement of its text to be entitled to copyright protection.

### b. ABRO's photograph on the Carb & Choke Cleaner label is original.

The Copyright Act extends copyright protection to pictorial and graphic works. 17 U.S.C. § 102(a) (5). "Federal courts have historically applied a generous standard of originality in evaluating photographic works for copyright protection." *Schrock*, 586 F.3d at 519. "[I]n many cases, the photographer does not invent the scene or create the subject matter depicted in it." *Id.* "[T]he original expression he contributes lies in the rendition of the subject matter-that is, the effect created by the combination of his choices of perspective, angle, lighting, shading, focus, lens, and so on." *Id.*

1New argues, without authority other than its own self-serving statement of facts, that "there is only one way to inform a consumer of what is inside a can of carb and choke cleaner— to place a label showing a picture of a carburetor and text stating 'Carb & Choke Cleaner.'" DE 176 at 6. Of course, that is not true. A photograph of a carburetor simply is not required. 1New also states, without authority, that "to find that an image of a carburetor on a can of a carburetor cleaner fluid is protected by copyright would be the same as finding that any image of any cow placed on a carton of milk accompanied by the words 'milk' is also protected by copyright." *Id.* However, although irrelevant, a photograph of a cow on a carton of milk could also be entitled to copyright protection if it contains sufficient original expression. *Schrock*, 586 F.3d at 519.

1New's argument ignores the fact that the Copyright Office specifically allowed ABRO's carburetor photograph as a part of the registrations. DE 177, 14-17; ABRO Exs. A-D. Additionally, ABRO's label is not just a photograph of a carburetor, as 1New argues. ABRO's copyright involves the effect created by ABRO's selection of the perspective, angle, and the

15

positioning of the photograph of the carburetor in the center of the can.  *See id.*; *see* DE 7-3 at 3, 7-4 at 3.  Thus, the photograph on ABRO's Carb & Choke Cleaner meets the "generous standard of originality" required for copyright protection.  *See Schrock*, 586 F.3d at 519.

> **2.  1New's Carb & Choke Cleaner label is substantially similar to ABRO's Carb & Choke Cleaner label that is the subject of ABRO's copyright registrations.**

In the Seventh Circuit, substantial similarity is determined by the ordinary observer test. *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 509-10 (7th Cir. 1994).  The ordinary observer test assesses "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value."  *Id*. at 10 (citations omitted).  In other words, "two works are substantially similar if 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.'"  *Id*. (citations omitted).  "The focus of this test is the overall similarities rather than the minute differences between the two works."  *S.C. Johnson & Son, Inc. v. Turtle Wax, Inc.*, No. 89 C 5792, 1989 WL 134802, at *1 (N.D. Ill. Oct. 17, 1989). Moreover, summary judgment is generally not favored on the question of substantial similarity in copyright cases.  *Nielsen Co. (US), LLC v. Truck Ads, LLC*, No 08 C 6446, 2011 WL 3857122, at *17 (N.D. Ill. Aug. 29, 2011); *Schiller and Schmidt, Inc. v. Wallace Computer Servs., Inc.*, No. 85 C 4415, 1989 WL 152860, at *3 (N.D. Ill. Nov. 20, 1989) (citations omitted). Indeed, it is difficult to imagine an issue more appropriate for resolution by a jury than the question of whether two labels are substantially similar in the eyes of an ordinary observer.

A reasonable person could determine that the text on 1New's Carb & Choke Cleaner label is substantially similar to the text on ABRO's Carb & Choke Cleaner label.  In *Graphic Design*, 772 F.Supp.2d at 1033, a preliminary injunction case involving a copyright registration

that was obtained 10 years after first publication, the court exercised its discretion under 401(c) and determined there was a likelihood of success on the merits of Graphic Design's copyright infringement claim for infringement of the packaging for its decals when the evidence demonstrated copying by defendant.  There, plaintiff's decal packaging included a black header with the word "Stickers" in white letters in a distinctive font outlined in black and red and contained descriptive language and instructions in smaller type on the bottom and the back.  *Id.* at 1032.  The court noted that despite two differences in color and spelling between plaintiff's and defendant's packaging, plaintiff was likely to succeed in proving the copying element of its infringement claim.  *Id.* at 1033.  Here, 1New utilized the same red and white color scheme for the "Carb & Choke Cleaner" text, placing the text on the same blue background in the same location on the can, with a virtually identical font selection as ABRO.  *See* DE 177-27.  An ordinary observer would likely regard the aesthetic appeal of the labels as the same.  *See Wildlife Express*, 18 F.3d at 510; *see* DE 177-27.  Thus, there is a triable fact issue because a reasonable jury could determine that 1New's label is substantially similar to ABRO's copyrighted label.

Similarly, a reasonable jury could determine that the other text on 1New's Carb & Choke Cleaner label is substantially similar to the protected text on ABRO's Carb & Choke Cleaner label.  1New has almost identical language on its label arranged in the same manner as ABRO's and, as such, an ordinary observer would likely regard the aesthetic appeal of the labels the same.  *See Wildlife Express*, 18 F.3d at 510.  Indeed, 1New's own side-by-side translation of the Russian language on the competing labels, establishes that the product names, front titles, and text descriptions and directions/applications of the two products are virtually identical.  DE 177-25; *See also* ABRO Ex. G.

Additionally, a reasonable jury could find that the aesthetic appeal of both 1New's rendering and ABRO's photograph are substantially similar and therefore a triable fact issue exists.  *See* DE 177-27.  Copyright infringement involving photography "has been found 'where the [accused] photographer in choosing the subject matter, camera angle, lighting, etc., copies and attempts to duplicate all of such elements as contained in a prior photograph.'"  *Bryant v. Gordon*, 483 F. Supp. 2d 605, 617 (N.D. Ill. 2007) (citations omitted).  In *Bryant*, the court determined that there was a triable fact issue where both parties' photographs were of the same subject matter, taken from the same angle and with the same scene and terrain.  *Id.* at 618.  There, defendant took a photograph that was similar to plaintiff's photograph of a sniper team.  *Id.* at 614.  The court noted that although there were some differences between the photographs, the court could not determine "that an ordinary observer would detect the differences without setting out to find them."  *Id.* at 618 (citation omitted).

Similarly, here, it is likely that an ordinary observer would not detect any differences between ABRO's gray carburetor and 1New's a gray carburetor, especially where 1New's Carb & Choke Cleaner label contains a carburetor that is placed in the exact same location as the carburetor on ABRO's Carb & Choke Cleaner label, in the center of the can, and is also placed against the same blue background.  *See* DE 177-27.  Thus, there is a genuine issue of fact because it is likely that an ordinary observer would regard the aesthetic appeal of the labels the same.  *See Wildlife Express*, 18 F.3d at 510; *see* DE 177-27.

C.    **ABRO sustained damages as a result of 1New's infringement and faces future damages if the infringing conduct continues.**

Under the Copyright Act, a plaintiff in a copyright infringement action may obtain compensation in the form of actual damages plus the profits of the infringer.  17 U.S.C. § 504(b).  A court may also award an injunction to prevent future infringement.  17 U.S.C. § 502(a).

18

      **1.**     **A triable issue exists as to whether ABRO may recover actual damages.**

1New argues that ABRO cannot prove actual damages based on additional profits earned by the infringer under 17 U.S.C. § 504(b) because: (1) 1New sold only "2 containers" of 1New carb & choke cleaner before the lawsuit (citing non-existent paragraphs in its statement of facts), and (2) 1New did not order, manufacture, sell, or offer for sale, the carb & choke cleaner after the lawsuit was filed.  DE 176 at 16-17.  1New states repeatedly in its brief that it only sold "2 containers" of 1New Carb & Choke Cleaner seemingly suggesting that such limited sales did not generate gross revenue. Notably, however, 1New admits that "2 containers" actually means "two sea containers," which carried a total of 6,480 cases of its infringing product.  DE 176 at 18.

In order to establish 1New's profits, ABRO is "required to present proof only of the infringer's gross revenue, and the infringer is required to provide his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."  17 U.S.C. 504(b).  1New has simply failed to come forward with any competent evidence attributing profit to factors other than the copyrighted works.  To the contrary, it merely concludes that it "never made any profit from these sales and actually sustained losses."  DE 176 at 17.  However, 1New affirmatively introduced ABRO's damages expert's report into the summary judgment record. DE 177-39 (1New Ex. 32 (filed under seal)).  ABRO's expert has verified that this is a true and accurate copy of his report and that the report accurately reflects his expert opinions in this case. ABRO Ex. I.  As the expert explains, 1New's gross revenue is ▮▮▮▮▮▮ from 1New selling 6,480 cases to JSC Aerograf (another company owned by Zorin).  1New Ex. 32 at 25 (filed under seal).   While 1New may argue that it purchased the case from Quest for ▮▮▮▮▮▮ ABRO's expert notes that it does not appear to be an arms-length transaction given that the sale was essentially done at the products' purchase cost.  *Id.*  In any event, 1New did generate gross

revenue from its sales and has the burden to provide its deductible expenses and elements of profit attributable to factors other than its infringing label, not simply state that it did not make a profit and/or sustained losses. *See* 17 U.S.C. §504(b).

Regarding ABRO's actual damages claim, 1New argues that "[t]here is no evidence that the market value of 'ABRO Carb & Choke Cleaner' as a product in Russia or worldwide has been affected by 1New Parties' sale in 2014 of just two containers. . . ." DE 176 at 18.  Citing ABRO's expert report, 1New further claims that there are no damages because ABRO had a ▮ increase in revenue from 2013. *Id.*  This argument ignores the actual data related to ABRO's sales.  In fact, the report demonstrates that revenue from ABRO's Carb & Choke cleaner products increased by ▮ in the two years preceding the filing of this lawsuit, including by ▮ in 2012 and ▮ in 2013. *See* 1New Ex. 32 at 14-15 (filed under seal). ABRO's revenue growth from its carb & choke cleaner products dropped to a mere ▮ in 2014, after 1New introduced its infringing product on the Russian market. *Id.*  ABRO's revenue for the products actually decreased ▮ in 2015. *Id.* The damages expert's detailed opinion documents this decline in both dollar revenue and cases sold and culminates in an opinion that ABRO suffered hundreds of thousands of dollars in lost profits due to 1New's infringement. *Id.* at Tabs 3-6.

1New further argues that ABRO's expert report "has no analysis for ABRO actual damages related to its sales of its 'ABRO Carb & Choke Cleaner' in Russia in 2014 – the report provides analysis only for combined 2014-2015 period without breakdown of damages for 2014." DE 176 at 19.  This simply is not true. Tab 3 to the report breaks down ABRO's lost profits by year in 2014 and 2015.  1New Ex. 32 at Tab 3 (filed under seal).   1New also claims, without support, that ABRO's expert report is "pure speculation" because it ignores competition

in the Russian market, total market capacity for the product, a Russian economic crisis, ABRO "uprooting and redoing" its distributors in Russia, including terminating Igor Zorin, and the fact that ABRO's products sell for Russian rubles and ABRO gets paid in U.S. dollars. *Id.* These arguments all go to the weight of the expert's opinion, not its admissibility. Notably, 1New has not sought to exclude the expert's report under Rule 702. This unrefuted opinion at a minimum creates an issue of fact as to ABRO's actual damages claim. *See Loy v. Norfolk Southern Ry. Co.*, 112 F. Supp. 3d 795, 800, 801 (N.D. Ind. 2015) ("The admissibility of expert testimony is governed by Federal Rule of Evidence 702 . . . Although the court must decide questions of admissibility, the weight and credibility to be accorded expert testimony is properly left to the jury.") (Citation omitted).

## 2. ABRO may obtain an injunction to prevent future copyright infringement.

Although ABRO sustained damages as a result of 1New's actions, as demonstrated above, proof of damages is not an essential element for a copyright infringement claim. *See Forest River,* 753 F. Supp. 2d at 758 (copyright infringement claim requires: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."). In any event, to the extent monetary damages are insufficient relief, a court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. 502(a). "Injunctions can apply to not only existing works, but also works created in the future. . . . [and] can include directing the destruction of all copies of infringing works in a defendant's custody and control." *Virgin Records America, Inc. v. Johnson*, 441 F. Supp. 2d 963, 955-56 (N.D. Ind. 2006) (citations omitted). Even though 1New claims it voluntarily discontinued production of its infringing labels, ABRO is not required to accept

1New's assurances.  *See Graphic Design,* 772 F. Supp. 2d at 1032.  Thus, an injunction is meaningful relief and may be awarded in addition to, or in lieu of, monetary damages.

> **D.      ABRO did not Abuse the Judicial Process**

1New also incorrectly argues that this Court should grant its motion for summary judgment "because ABRO misused both the judicial process and copyright laws."  (DE 176 at 21-24).  ABRO did not misuse the copyright laws or abuse the judicial process, nor do the cases cited by 1New support the claim that it did.

1New's reliance on *qad. inc. v. ALN Associates, Inc.*, 770 F.Supp. 1266 (N.D. Ill. 1991) is misplaced.  In *qad*, defendant asserted the affirmative defense of misuse of a copyright and filed a motion for summary judgment seeking a determination that a claim for copyright infringement could not be asserted in light of the copyright misuse.  *Id.* at 1263.  The court explained copyright misuse is based on the following:

> No party can use the limited grant that a copyright confers to gain control of components over which it has no such right…When a copyright holder attempts to use legal proceedings to protect an improper extension of a copyright, the court may refuse to enforce the copyright.

*Id.* at 1266.  The court found that plaintiff mislead the Copyright Office when applying for its copyright because it represented to the office that the work was its original work when in fact, the work had been copied from a pre-existing work. *Id.* at 1267. The plaintiff never disclosed the fact that it had copied pre-existing work.  Thus, the Court found that the plaintiff had misused the copyright because it was trying to assert protection over work (the copied work) that was never protected.  *Id.*

Unlike *qad*, ABRO's copyright was not based on copied work or based on a copyright that was obtained through the willful nondisclosure of the fact that the material

was in fact copied from another source.   Indeed, 1New has come forward with no information even remotely suggesting any willful nondisclosure before the Copyright Office.   There can be no misuse claim arising out of obtaining a copyright for ABRO's legitimately protected label.

Similarly, *Brooks-Ngwenya v. Indianapolis Public Schools*, 564 F.3d 804 (7th Cir. 2009) does not support the contention that ABRO misused the process.   In *Brooks-Ngwenya*, the plaintiff filed an application for a copyright.   The Copyright Office denied her application.   *Id.* at 806. The plaintiff never notified the copyright office that she had filed a lawsuit based on the denied application.   *Id.* The Court dismissed her claim under 17 U.S.C. § 411(a) for failure to provide the required notice to the Copyright Office. *Id.* at 807-808.

1New incorrectly asserts that ABRO's copyright was denied and that ABRO never provided notice under the statute to the Copyright Office.   As previously explained, ABRO's copyright was not categorically rejected as suggested by 1New.   Although here the Copyright Office requested revisions to the applications, unlike in *Brooks-Ngwenya,* the applications were ultimately approved and copyright certificates did issue. Therefore, this is not a situation where ABRO is trying to proceed on copyrights that were never issued.

Additionally, ABRO completed the AO 121 form and filed it with this Court on December 16, 2014. *See* DE 18.   It identified either the assigned copyright registration numbers or the pending application number. Therefore, ABRO has met all procedural requirements to bringing this lawsuit.

Given the title of this section of 1New's brief, it also appears that 1New is trying to assert an abuse of process claim as a potential defense to the copyright claim. Abuse of process is a recognizable claim in Indiana. *See e.g. Reichhart v. City of New Haven,* 674 N.E.2d 27, 31 (Ind. Ct. App. 1996). However, 1New never asserted a claim for abuse of process. *See* Counterclaim-DE 23 at 26-31.

Furthermore, under an abuse of process claim, "the test of an improper process is whether the legal steps were procedurally and substantively proper under the circumstances." *Id.* The designated evidence shows that ABRO properly sought registration of its copyrights and utilized the court system to enforce the copyrights. 1New tries to support its claim by stating that ABRO never produced copies of the registration certificates, but never suggests how this supports its argument that it failed to provide proper notice to the copyright office, misused the copyright, or abused the process.

1New also suggests that "ABRO's only purpose in this hastily filed suit is to harass, pressure, and harm its competitor" and that this is somehow evidence of abuse of process. (DE 176 at 23). This is a factual question as ABRO's evidence demonstrates that it had legitimate business reasons for pursuing this action after it learned that its former distributor was improperly using ABRO's work. The evidence further reveals that 1New took affirmative steps to copy ABRO's work. *See* DE 170-1 at ¶ 67, 70-71. Additionally, the arguments offered by 1New are not even sufficient to support a claim for abuse of process. "If a party's acts are procedurally and substantively proper under the circumstances then his intent is irrelevant." *Watson v. Auto Advisors, Inc*., 822 N.E.2d 1017, 1029 (Ind. Ct. App. 2005). In other words, "there is no liability where the

defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Reichhart*, 674 N.E.2d at 31. Accordingly, by utilizing the court system to enforce copyrights in accordance with Seventh Circuit standards, ABRO did not abuse the process.

### E.     1New is not Entitled to Attorney's Fees

1New asserts that it is entitled to attorney's fees because there is a strong presumption in favor of awarding attorney's fees to defendants in copyright cases. 1New has the cart before the horse. As explained in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994), "*[p]revailing* plaintiffs and *[p]revailing* defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." (Emphasis added). The keys to the analysis are (1) who is prevailing; and (2) in the court's discretion, are fees appropriate.

As demonstrated above, 1New is not a prevailing party because there are questions of fact which preclude summary judgment in favor of 1New.[4] Because summary judgment is not appropriate, it is premature to address 1New's claim for attorneys' fees and the court should deny 1New's motion.

### IV.    Conclusion

For the foregoing reasons, summary judgment in favor of 1New on the copyright claims should be denied.

---

[4] It is important to note that there is no discussion in the brief as to ABRO's claims for personal liability and/or vicarious liability. Rather, the 1New Defendants simply attack the validity and enforceability of the copyrights. As demonstrated in this brief, there are genuine issues of material fact and legal issues which prevent the entry of summary judgment on those issues.

Date:  July 7, 2017

BARNES & THORNBURG LLP


By   /s/  Alice J. Springer

D. Randall Brown (15127-49)
*randy.brown@btlaw.com*
888 S. Harrison Street, Suite 600
Fort Wayne, Indiana  46802
Telephone:  (260) 423-9440
Facsimile:  (260) 424-8316

Alice J. Springer (25105-64)
*alice.springer@btlaw.com*
52700 Independence Court
Suite 150
Elkhart, IN 46514
Telephone: (574) 237-1120
Facsimile: (574) 237-1125

ATTORNEYS FOR ABRO INDUSTRIES,
INC. AND PETER BARANAY

26

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2017, I electronically filed this Brief with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Anne L. Cowgur
Cristina A. Costa
Johnathan G. Polak
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Ste 3500
Indianapolis, IN 46204
*acowgur@taftlaw.com*
*ccosta@taftlaw.com*
*jpolak@taftlaw.com*

Yevgeniy I. Turin, Sr.
LAW OFFICES OF EUGENE TURIN
400 Skokie Blvd, Ste 380
Northbrook, IL 60062
*attorney@eugeneturinlaw.com*

BARNES & THORNBURG LLP


By  /s/   Alice J. Springer

27